AMERICAN FOODS, INC. v. GOODSON FARMS, INCORPORATED, AND J. MICHAEL GOODSON

No. 805SC638

(Filed 17 February 1981)

1. **Mortgages and Deeds of Trust § 32.1— action to recover on note — no protection of deficiency judgment statute**

   In an action to recover on a note, the trial judge did not err in denying defendants' motion for summary judgment and in striking defendants' defense that they were entitled to the protection afforded by G.S. 45-21.38 which prohibits deficiency judgments on purchase money transactions, since the note in this case did not indicate on its face that it was a purchase money instrument; title to the real estate was taken only in the name of a corporation capitalized by plaintiff and it was foreclosed in an action against that corporation only; defendants had no record title interest in the land acquired by foreclosure; and the endorsements by defendants were nothing more than additional collateral which were required by plaintiff seller.

2. **Mortgages and Deeds of Trust § 32.1— action to recover on note — no protection of deficiency judgment statute**

   In an action to recover the balance due on a note where the purchase agreement between plaintiff and defendant provided that plaintiff would sell to defendant certain land together with crops, machinery and miscellaneous inventories, that plaintiff would convey to defendant stock in a wholly owned subsidiary, that, upon request of defendant, plaintiff would cause a corporation known as Lewis Nursery to be capitalized and would transfer the assets described in the purchase agreement to the corporation, and that stock in the newly organized

---

American Foods v. Farms, Inc.

---

corporation would then be transferred to defendant for the same purchase price, and a note payable to plaintiff was executed by the Nursery and defendants and was secured by a deed of trust on the land in question, there was no merit to defendants' contention that they were comakers under the note and as such were entitled to the protection against deficiency judgments provided by G.S. 45-21.36, since the protection of that statute is limited to persons who hold a property interest in the mortgaged property, and defendants in this case did not hold a property interest in the land in question, title to which was recorded in the name of Lewis Nursery.

**3. Bills and Notes § 20— *action to recover on note — amount of recovery***

In an action to recover on a note, there was no merit to defendants' contention that the trial court's award to plaintiff was not supported by the evidence where there was a difference of $3,692 between the relief requested in plaintiff's complaint and the amount set forth as owing in plaintiff's vice-president's affidavit, since such a trivial variance, less than one-half of a percentage point of the amount awarded, was not crucial, particularly where the variance favored defendants.

**4. Vendor and Purchaser § 8— vendor's failure to comply with purchase agreement — buyer's counterclaim dismissed**

In an action to recover on a note where defendants counterclaimed asserting breach of the parties' purchase agreement by plaintiff for its failure to deliver stock in a wholly owned subsidiary, the trial court did not err in dismissing defendants' counterclaim since the purchase agreement provided that the stock of the subsidiary would be transferred only after appropriate consent was given by another corporation with which seller jointly owned the subsidiary; the other corporation would not consent to the transfer of the stock; the parties attempted to negotiate a new agreement for the transfer but were unsuccessful; and plaintiff therefore had no further obligation to transfer the stock to defendants.

**5. Attorneys at Law § 7.4— action on note — award of attorney fees proper**

In an action to recover on a note which provided that, if any amount payable was collected through an attorney, the maker agreed to pay to the holder a reasonable amount as costs, attorney and collection fees, plaintiff was estopped to claim 15% of the outstanding balance owing on the note, as provided by G.S. 6-21.2, since plaintiff's attorney filed an affidavit setting out that the services he had rendered were worth $4,140; the trial judge awarded the attorney $4,500; and both amounts were substantially less than the amount provided by the statute.

Judge WELLS concurring in part and dissenting in part.

APPEAL by both plaintiff and defendant from *Llewellyn, Judge.* Judgment entered 8 February 1980 in Superior Court, PENDER County. Heard in the Court of Appeals 15 January 1981.

This is an action to recover the balance due on a note. Pursuant to the terms of a Purchase Agreement dated 30 June 1978, plaintiff contracted to sell to Goodson Farms, Inc. (hereinafter Goodson

Farms), approximately 859 acres of land in Pender County to-
gether with crops growing on the lands, certain machinery and
equipment, and miscellaneous inventories and supplies. In addi-
tion, plaintiff agreed to convey to Goodson Farms all of the issued
and outstanding stock in a wholly-owned subsidiary known as Hy-
Yield, Inc., provided, among other things, appropriate consent was
given by Ameribrom, Inc., with which American Foods, Inc., joint-
ly owned Hy-Yield.

The Purchase Agreement further provided that, upon the
request of Goodson Farms, plaintiff would cause a corporation
known as Lewis Nursery, Inc., to be capitalized and would transfer
the assets described above to the corporation. Thereafter, the stock
in the newly organized corporation would be transferred to Good-
son Farms for the same purchase price. (Apparently, the purpose of
the transfer of stock to Lewis Nursery, Inc., and subsequent
transfer to Goodson Farms was to pass to the purchaser certain
goodwill in the established operating name of the farm operation.)

The Purchase Agreement established the purchase price at
$1,250,000.00. The sum of $50,000.00 was to be paid at closing. The
balance of $1,200,000.00 was to be evidenced by and paid in accor-
dance with the terms of a promissory note in three installments of
$150,000.00, $50,000.00 and $1,000,000.00. The unpaid balance was
to bear interest at 8%, payable at maturity. The note was to be
secured by a deed of trust on the real estate, and as further security
the equipment and inventory were to be pledged under a security
agreement. J. Michael Goodson, one of the defendants, agreed to
join in the execution of the note as a comaker.

Transfer of the property was made to Lewis Nursery, Inc., and
a note payable to American Foods was executed by Lewis Nursery,
Inc., Goodson Farms and J. Michael Goodson. The note contained an
acceleration clause and further provided that in the event of de-
fault, if the note was placed in the hands of an attorney for collec-
tion, the makers agreed to pay the holder a reasonable amount for
costs, attorney fees and collection fees. Neither the note nor the deed
of trust provided on its face that the sale was a purchase money
transaction.

The defendants paid $300,000.00 on the note and then defaulted.
Plaintiff accelerated the balance due and filed complaint, claiming
$991,150.00, together with interest at 8% on $1,200,000.00, plus

attorney fees at 15% of the principal and interest due.

Defendants filed answer setting forth several defenses and a counterclaim asserting breach of the Purchase Agreement by plaintiff for its failure to deliver the stock in Hy-Yield, Inc. Defendants' Third Defense asserted that they were entitled to the protection afforded by G. S. 45-21.38 which prohibits deficiency judgments on purchase money transactions. Defendants' Fourth Defense was based on the provisions of G.S. 45-21.36 which, if applicable, would require plaintiff to account in full for the fair value of the land it acquired at its own foreclosure sale which had been completed during the pendency of the suit *sub judice.* (During the pendency of the case, the plaintiff caused the deed of trust to be foreclosed and submitted the last and highest bid.) Plaintiff thereupon moved to strike the defendants' Third and Fourth Defenses as set forth in the answer.

Plaintiff filed a reply to defendants' counterclaim and a motion to dismiss the counterclaim. Thereafter, plaintiff moved for summary judgment as to defendants' counterclaim, and the defendants filed an affidavit in opposition to plaintiff's motion on the counterclaim. Plaintiff's counsel also filed an affidavit setting forth in detail the services and time involved in support of his claim for attorney fees.

The trial judge on 28 January 1980 heard the motions and thereafter entered two orders. One order struck the defendants' Third and Fourth Defenses. The second order granted summary judgment in favor of the plaintiff in the sum of $192,443.30 plus accrued interest of $3,985.80, and accrued interest at 10% until paid. The order also dismissed defendants' counterclaim and allowed plaintiff's attorneys $4,500.00 as attorney fees rather than the 15% of principal and interest due claimed by plaintiff. Both plaintiff and defendants appealed.

*Murchison, Fox & Newton, by Wallace C. Murchison and William R. Shell, for plaintiff appellee-appellant.*

*Poisson, Barnhill, Butler & Britt, by L. J. Poisson Jr., for defendant appellant-appellees.*

HILL, Judge.

[1] Defendants contend the trial judge erred in denying their

motion for summary judgment and in striking their Third Defense. Defendants cite as support for their contention G. S. 45-21.38, which reads, in pertinent part, as follows,

> In all sales of real property by mortgagees . . . under powers of sale, contained in any mortgage or deed of trust executed after February 6, 1933, . . . to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee . . . or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided, said evidence of indebtedness shows upon the face that it is for balance of purchase money for real estate:

The defendants contend this statute must be read in conjunction with *Realty Co. v. Trust Co.*, 296 N.C. 366, 250 S.E.2d 271 (1979).

In *Realty*, the defendant purchased certain real estate from the plaintiff. As a part of the purchase price the defendant purchaser delivered to the plaintiff seller a purchase money note and deed of trust covering the property conveyed. Upon default, instead of foreclosing on the deed of trust, plaintiff instituted an action against the defendant upon the promissory note. The Supreme Court held that the defendant purchaser was entitled to the protection of G. S. 45-21.38 because the defendant was a purchase money mortgagor and that plaintiff seller could not avoid the provisions of the statute by abandoning its security in the real property and substituting a suit on the underlying note.

Justice Britt, speaking for the Court, at page 373, said:

> Having in mind the purpose for which G. S. 45-21.38 was adopted, the perceived problem which the statute seeks to remedy and the effect which a literal construction of the statute produces, we are compelled to construe the statute more broadly and to conclude that the Legislature intended to take away from creditors the option of suing on the note in a purchase money mortgage transaction. This construction of the statute not only prevents its evasion, but also gives effect to the Legislature's intent.

The case *sub judice* is distinguishable from *Realty*. In that case, the collateral consisted of real estate only. In *Realty* the note and

deed of trust each indicated on its face that it was a purchase money instrument. No such indication appears on the note in the instant case. In the case *sub judice*, title to the real estate was taken in the name of Lewis Nursery, Inc. only, and foreclosed in an action against the Nursery. Unlike the defendants in *Realty*, defendants in the case *sub judice* had no record title interest in the land acquired by foreclosure. (No trust relationship is alleged or in evidence.) The endorsements by the defendants were nothing more than additional collateral which were required by the plaintiff. We conclude that the trial judge did not err in denying defendants' motion for summary judgment and by striking defendants' Third Defense.

**[2]**  Defendants next contend the trial judge erred in striking their Fourth Defense. Defendants rely upon G. S. 45-21.36, which provides, in pertinent part, as follows:

> When any sale of real estate has been made by a mortgagee, . . . at which the mortgagee, . . . becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee, . . . shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor *or other maker of any such obligation whose property has been so purchased,* it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and offset, but not by way of counterclaim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale *or that the amount bid was substantially less than its true value,* and, upon such showing, to defeat or *offset any deficiency judgment against him,* either in whole or in part: (Emphasis added.).

The record in this case reveals that American Foods began a foreclosure suit under the deed of trust and became the last and highest bidder. The net proceeds from the sale were applied toward payment of the note, leaving a balance due. Defendants contend they were comakers under the note and as such are entitled to the protection against deficiency judgments provided by G. S. 45-21.36.

In *Trust Co. v. Martin*, 44 N.C. App. 261, 264, 261 S.E. 2d 145 (1979), Judge Wells, speaking for this Court, points out that in passing G. S. 45-21.36,

[T]he General Assembly intended to limit protection to those persons who *held a property interest* in the mortgaged property, and that such protection was not applicable to other parties liable on the underlying debt. (Emphasis added.)

By contending they are comakers and as such are entitled to the defense established by G. S. 45-21.36, defendants are in effect asking this Court to pierce the corporate veil in a unique way. Defendant Goodson is asking us to wrap the corporate cloak of Lewis Nursery, Inc., around him, since he financed the corporation, and conclude that he and Goodson Farms had an equitable interest in the lands, title to which was recorded in the name of Lewis Nursery, Inc. This we cannot do. Defendants did not hold a property interest in Lewis Nursery, Inc. The trial judge did not err by striking defendants' Fourth Defense.

**[3]** Defendants next assert that the trial court erred in allowing plaintiff's motion for summary judgment in the amount set forth in the court's order. Defendants contend that the award is not supported by the evidence.

Upon examination of the record, it becomes clear that there is a difference of $3,692.00 between the relief requested in plaintiff's complaint and the amount set forth as owing in plaintiff's vice-president's affidavit. Clearly, such a trivial variance—less than one-half of a percentage point of the amount awarded—is not crucial, particularly when, as in this case, the variance favors defendant. Furthermore,

So long as some demand for relief is made, it apparently is not crucial that the wrong relief has been demanded. Rule 54(c) provides in part that 'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled even if the party has not demanded such relief in his pleadings.'

Shuford, N. C. Civil Practice and Procedure, § 8-5, p. 69 (1975).

Defendants go on to question whether plaintiff was granted the relief to which it is entitled. Defendants contend that the only evidence to support the judgment is the testimony of plaintiff's vice-president, Mr. Wilson. An examination of the record shows, however, that Wilson also filed three affidavits which, together with his

testimony, show that he was familiar with plaintiff's records concerning the amount owed on the note at issue.

We can find no error with the trial court's order allowing plaintiff's motion for summary judgment in the amount set forth. Plaintiff's evidence supports the order, and defendants have filed no affidavits or introduced any evidence to put the amount in dispute. Defendants have merely made a general denial in their complaint. Such denial, standing alone, is clearly insufficient to avoid entry of summary judgment under G. S. 1A-1, Rule 56.

[4]  Nor do we find the court erred in dismissing defendants' counterclaim. The Purchase Agreement provided that:

> In addition to the North Carolina Assets, Seller [Plaintiff] hereby agrees to convey to Buyer [Defendant] within 60 days of the Closing Date all of the issued and outstanding capital stock of Hy-Yield, Inc., a Florida corporation and a wholly-owned subsidiary of Seller ("Hy-Yield"); provided, however ... (ii) appropriate *consent by Ameribrom, Inc. to the change in ownership of Hy-Yield, shall have been obtained* in accordance with the terms of the Joint Venture Agreement between Hy-Yield and Ameribrom, Inc. . . . . . (Emphasis added.)

It became clear to the parties shortly after closing date that Ameribrom, Inc. would not consent to the transfer of Hy-Yield, Inc. stock under the joint venture agreement of the defendants. The parties attempted to negotiate a new agreement for the transfer, but were unsuccessful. Since the parties were unable to reach a new agreement regarding transfer of the Hy-Yield stock, or modify the purchase agreement, the terms set out still controlled. Inasmuch as Ameribrom would not consent to the transfer of the stock, and plaintiff could not procure Ameribrom's consent to release it from its guarantee of Hy-Yield obligations, both of which were conditions precedent to the transfer of the stock, plaintiff had no further obligation to transfer the stock to the defendants. The counterclaim was properly dismissed.

[5]  Plaintiff filed a counter-appeal contending the trial court erred in limiting its award of fees to $4,500.00.

The note which is the subject of this controversy provides, among other things, that if any amount payable is collected through

American Foods v. Farms, Inc.

an attorney, the maker agrees to pay to the holder a reasonable amount as costs, attorney and collection fees.

Plaintiff's attorney filed an affidavit, upon request of the trial judge, setting out the services he had rendered and further providing:

> Affiant has spent 69 hours in attorney's time on this case in rendering the above described services. Considering the services rendered, the amount involved, the complexity of the case and the result achieved, *Affiant is of the opinion that reasonable attorneys' fees would be in the amount of $60 per hour for the 69 hours incurred.* (Emphasis added.)

The trial judge awarded the attorney $4,500.00.

Plaintiff appealed, now contending the award is controlled by G. S. 6-21.2, which provides in part that where, as in this case, a note is collected by an attorney and such note provides for "payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing on said note, . . . ."

Plaintiff is estopped to claim that which the statute provides. The trial judge awarded a fee in excess of that sought by plaintiff. The cross-appeal is dismissed.

The actions of the trial judge are

Affirmed.

Judge ARNOLD concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS concurring in part and dissenting in part.

I concur in the portion of the majority opinion affirming summary judgment for the plaintiff on plaintiff's claim for recovery under the note and deed of trust.

I concur in the portion of the majority opinion that affirms the order of the trial court in awarding counsel fees.

I dissent from the portion of the majority opinion with respect

to summary judgment in plaintiffs' favor on defendant's counterclaim. The essence of defendant's counterclaim was that in the purchase agreement, plaintiff promised to convey to defendant Goodson Farms, Inc. all of the outstanding capital stock of Hy-Yield, Inc., a wholly-owned subsidiary of plaintiff, that plaintiff has failed and refused to convey said stock in Hy-Yield to Goodson Farms, Inc., and that plaintiff's failure to do so has resulted in substantial damage to defendant. Defendant introduced materials to substantiate its version of its rights in the counterclaim. Plaintiff responded by asserting that the agreement to convey the stock in Hy-Yield had two conditions: "appropriate consent of Ameribrom, Inc. to the change in ownership of Hy-Yield, shall have been obtained in accordance with the terms of the Joint Venture Agreement between Hy-Yield and Ameribrom, Inc."; and plaintiff "shall have been released from its guarantee of the obligations and duties of Hy-Yield under such joint venture agreement". The material presented to the trial court raises a genuine issue of material fact as to (1) whether the joint venture agreement would in fact require any consent by Ameribrom, Inc. to a change in ownership of Hy-Yield and (2) whether the joint venture agreement had been terminated altogether prior to the institution of this law suit, rendering the guaranty condition of the purchase agreement moot. For these reasons it does not appear that defendant's counterclaim was appropriate for disposition by summary judgment.