BORG-WARNER ACCEPTANCE CORPORATION, PLAINTIFF v. HUGH W. JOHNSTON AND WIFE, AUDREY S. JOHNSTON, DEFENDANTS

No. 8926SC830

(Filed 20 March 1990)

1. **Guaranty § 2 (NCI3d)— guarantor of corporate debt—defense available only to corporation**

    Defendants, as guarantors of a corporate debt, held no property interest in the Raleigh Inn and may not assert the defense contained in N.C.G.S. § 45-21.36 where title to the real property was held solely in the name of the corporation even though defendant Mr. Johnston owns 77% of the capital stock of the corporation, pledged his own assets, and extended his own credit in order to pay off creditors.

    **Am Jur 2d, Guaranty §§ 108, 109, 114.**

2. **Guaranty § 2 (NCI3d)— guarantor of corporate debt— corporation in bankruptcy—no jurisdiction in state court— defenses not available**

    Where defendants were guarantors of a corporate debt, they could not utilize the provisions of N.C.G.S. § 45-21.36 through N.C.G.S. § 26-12 since that statute requires that the principal must be joined as a party and requires that the surety show that our courts have jurisdiction over the principal. The corporation here has filed bankruptcy and is subject to the exclusive jurisdiction of the U. S. District Court for the Western District of North Carolina.

    **Am Jur 2d, Bankruptcy § 97.**

3. **Guaranty § 2 (NCI3d)— guarantors—waiver of rights**

    Defendant guarantors waived their right to be allowed to show as a defense the value of the real and personal property of the Raleigh Inn as of the day their answer was filed by specifically agreeing in their guaranties not to assert or take advantage of any defense based on lack of due diligence by the lessor in collection, protection or realization upon any collateral securing the indebtedness evidenced by the lease.

    **Am Jur 2d, Guaranty §§ 108, 114.**

BORG-WARNER ACCEPTANCE CORP. v. JOHNSTON

[97 N.C. App. 575 (1990)]

### 4. Guaranty § 2 (NCI3d) — guarantors — waiver of rights

There was no prejudicial error in an action on a guaranty agreement where the trial court erroneously found that the guaranty agreements were to induce leases rather than to have effect as security where the Raleigh Inn (the debtor) was given two options to purchase by plaintiff; the money loaned to the Inn was used for such work as removing tile and carpet, installing new carpet, completing a sound and lighting system for the lounge, installing a new gas hot water circulating system, and furnishing and installing 310 bathroom vanities; personal property which was purchased included a custom-made refrigerated salad bar, a custom-built registration desk, drapes, bedspreads, and 628 pillows; nearly $300,000 of the funds advanced were for the cost of labor used in remodeling the hotel; and plaintiff filed UCC financing statements at the Wake County Registry on the equipment and fixtures owned by the Inn. However, defendants waived in their guaranties any rights to defenses upon default under N.C.G.S. § 25-9-504(1) and (2); unlike a debtor, a guarantor may contractually waive his right to a commercially reasonable disposition of the debtor's collateral.

**Am Jur 2d, Guaranty §§ 108, 114.**

Judge COZORT concurring.

APPEAL by defendants from an order entered 13 April 1989 by *Judge Robert D. Lewis* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 13 February 1990.

On 16 January 1987 Borg-Warner Acceptance Corporation ("Borg-Warner") filed a Complaint against the defendants seeking to recover amounts owed to it by the Raleigh Inn, Inc. ("Inn"), formerly the Royal Villa, Inc., and guaranteed by the defendants. The defendants responded on 30 March 1987 with an Answer and Counterclaim.

On 21 December 1988, Borg-Warner filed a Motion for Summary Judgment. The defendants filed affidavits in opposition and also moved for summary judgment. Borg-Warner opposed the defendants' motion.

The matter was heard before the Honorable Robert D. Lewis on 13 April 1989 and an order was entered establishing certain

facts in the case and finding that only two issues remained to be tried by the jury pursuant to Rule 56(d) of the North Carolina Rules of Civil Procedure. The order further dismissed defendants' counterclaim with prejudice. The defendants gave timely notice of appeal.

*DeLaney and Sellers, P.A., by Timothy G. Sellers and Charles E. Lyons, for plaintiff-appellee.*

*Stott, Hollowell, Palmer & Windham, by E. Gregory Stott and Grady B. Stott, for defendants-appellants.*

LEWIS, Judge.

On 29 June 1983 and 28 December 1983, defendants signed guaranty agreements with the plaintiff under the terms of which they agreed to unconditionally guarantee the indebtedness of Royal Villa, Inc. to the plaintiff under two Equipment Lease Agreements between the plaintiff and Royal Villa, Inc. dated 29 June 1983 and 28 December 1983.

Royal Villa, Inc. was the owner of the real property upon which the Royal Villa Hotel was located and where the equipment, furniture and furnishings leased by the plaintiff to Royal Villa, Inc. were to be delivered. As additional security for its performance under the terms of the Equipment Leases, Royal Villa, Inc. executed a deed of trust in favor of the plaintiff encumbering the real estate. After executing these documents, Royal Villa, Inc. changed its name to The Raleigh Inn, Inc.

In May of 1986, the Inn filed a petition under Chapter Eleven of the Bankruptcy Code. The Inn subsequently defaulted in making timely payments to Borg-Warner. Pursuant to the terms of the Equipment Leases, the entire unpaid balances due were declared immediately due and payable on 30 November 1986.

An Order was entered by the Bankruptcy Court granting Raleigh Federal Savings & Loan Association, holder of a first deed of trust on the Wake County real property, and the plaintiff relief from the Automatic Stay of the Bankruptcy Code and permission to foreclose their deeds of trust.

During the course of the bankruptcy proceeding, a potential buyer of the Inn deposited $50,000.00 which was later forfeited

to the plaintiff and applied to the indebtedness owed to them by the Inn.

The plaintiff instituted foreclosure proceedings in Wake County and a foreclosure sale was held on 23 September 1987. The plaintiff was the only bidder present at the scheduled sale and entered a bid of $100,000.00. No other bids were made. A Trustee's Deed was delivered to Borg-Warner. The net proceeds from the foreclosure sale, totaling $94,353.00 were disbursed to Borg-Warner and applied to reduce the indebtedness of the Inn. At the time of the sale, the Promissory Note secured by the first deed of trust in favor of Raleigh Federal Savings & Loan Association was also in default with a balance due and owing in excess of $3,500,000.00. Proceedings had been instituted in Wake County to foreclose the Raleigh Federal Savings & Loan Association deed of trust.

In January 1988, the real property formerly owned by the Inn and acquired by the plaintiff through foreclosure was sold to P.S. Investment Company, Inc. for the sum of $5,024,419.89. The personal property located at the Inn was also sold to P.S. Investment Company, Inc. for $10.00. Neither the Inn nor the defendants received any notice from Borg-Warner of the sale of the property.

Borg-Warner claims and defendants deny that there is a total balance due and owing on the Inn leases of $1,222,298.23. Defendants claim that through its sale of the real and personal property of the Inn, plaintiff received a return on its loan of $1,694,318.00 and that this amount should be used to extinguish their indebtedness.

I.

Defendants' Right To Assert Certain Statutory Defenses

[1] Defendants contend that as guarantors they are entitled to the defense established by G.S. § 45-21.36, which provides in pertinent part:

> When any sale of real estate has been made by a mortgagee, trustee, or other person authorized to make the same, at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against

BORG-WARNER ACCEPTANCE CORP. v. JOHNSTON

[97 N.C. App. 575 (1990)]

> the mortgagor, trustor *or other maker of any such obligation whose property has been so purchased*, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and offset, but not by way of counterclaim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and, upon such showing, to defeat or offset any deficiency judgment against him, either in whole or in part. . . .

G.S. § 45-21.36. (Emphasis added.) This statute limits protection to those parties who hold a property interest in the mortgaged property and is not applicable to other parties liable on the underlying debt. *First Citizens Bank & Trust Co. v. Martin*, 44 N.C. App. 261, 264, 261 S.E.2d 145, 148 (1979), *disc. rev. denied*, 299 N.C. 741, 267 S.E.2d 661 (1980). Defendants contend that they do own a property interest in the property of the Inn since Mr. Johnston owns 77% of the capital stock of the corporation, pledged his own assets and extended his own personal credit in order to pay off creditors. Borg-Warner argues that defendants do not possess a property interest in the Inn since title to that property was held solely in the name of the corporation. In support of its argument, Borg-Warner cites *American Foods, Inc. v. Goodson Farms, Inc.*, 50 N.C. App. 591, 275 S.E.2d 184, *disc. rev. denied*, 303 N.C. 180, 280 S.E.2d 451 (1981), *aff'd*, 304 N.C. 386, 283 S.E.2d 517 (per curiam) (1981) (affirming result of hearing). In that case J. Michael Goodson, one of the defendants, was the comaker of a note securing property in the name of Lewis Nursery, Inc. This Court refused to allow defendant Goodson to assert the defense contained in G.S. § 45-21.36, stating:

> By contending they are comakers and as such are entitled to the defense established by G.S. § 45-21.36, defendants are in effect asking this Court to pierce the corporate veil in a unique way. Defendant Goodson is asking us to wrap the corporate cloak of Lewis Nursery, Inc., around him, since he financed the corporation, and conclude that he and Goodson Farms had an equitable interest in the lands, title to which was recorded in the name of Lewis Nursery, Inc. This we cannot do. Defendants did not hold a property interest in Lewis Nursery, Inc.

*Id.* at 597, 275 S.E.2d at 188. We see no difference between this case and the case at bar. Title to the real property was held solely in the name of the corporation. Defendants, as guarantors of the Inn, hold no property interest in the Inn and therefore may not assert the defense contained in G.S. § 45-21.36.

[2]    The defendants next contend that since the Inn, as mortgagor, could utilize the provisions of G.S. § 45-21.36, they should be allowed to do so pursuant to G.S. § 26-12, which states:

(a) As used in this section, 'surety' includes guarantors. . . .

(b) When any surety is sued by the holder of the obligation, the court, on motion of the surety may join the principal as an additional party defendant, *provided the principal is found to be or can be made subject to the jurisdiction of the court.* Upon such joinder the surety shall have all rights, defenses, counterclaims, and setoffs which would have been available to him if the principal and surety had been originally sued together.

G.S. § 26-12. (Emphasis added.) Because the Raleigh Inn, Inc. has filed bankruptcy pursuant to Chapter Eleven of the United States Bankruptcy Code, it is subject to the exclusive jurisdiction of the United States District Court for the Western District of North Carolina. *See* 28 U.S.C. 1334(d). The statute expressly states that the principal *must be joined as a party* and to do so requires the surety to show that our courts have jurisdiction over the principal. This the defendants are unable to do. Therefore, the defendants may not avail themselves of the rights and privileges afforded by G.S. § 26-12.

[3]    In the alternative, the defendants assert that they should be allowed to show the value of the real and personal property of the Inn as of March 30, 1987, the day their answer was filed in this case. Defendants contend that their answer provides notice to the plaintiff pursuant to G.S. § 26-7 "to use all reasonable diligence to recover against the principal and to proceed to realize upon any securities which he holds for the obligation." However, the defendants expressly waived their right to this defense by specifically agreeing in their guaranties "not to assert or take advantage of . . . (k) any defense based on lack of due diligence by Lessor in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Lease. . . ."

## II.

### Defendants' Equipment Leases As Security Interests

[4] Defendants assign as error the trial court's finding that the guaranty agreements were to induce leases instead of finding that the agreements were to have effect as security, and as such were governed by Article 9, Chapter 25 of the Uniform Commercial Code.

> Whether a lease is in fact intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

G.S. § 25-1-201(37). The Inn was given two options to purchase from Borg-Warner. One option to purchase is in the amount of $1.00. The other option is in the amount of "fair market value." Additionally, the defendants point out that the money loaned to the Inn was used for such work as removing tile and carpet, installing new carpet, completing a sound and lighting system for the lounge, installing a new gas hot water circulating system, and furnishing and installing 310 bathroom vanities. Personal property which was purchased included a custom-made refrigerated salad bar, a custom-built registration desk, drapes, bedspreads, and 628 pillows. Furthermore, nearly $300,000 of the funds advanced was for the cost of labor used in remodeling the hotel. The plaintiff filed UCC financing statements at the Wake County Registry on the equipment and fixtures owned by the Inn. We find that based on these factors, the parties did intend for the leases to act as security. Accordingly, Article 9 applies to these agreements.

Defendants argue that under Article 9 they are entitled to the protections afforded under the statute which pertain to certain rights upon default. See G.S. § 25-9-504(1)(a)(b), G.S. § 25-9-504(2). However, defendants waived any right to assert these defenses in their guaranties. While it is true that a *debtor* may not waive his entitlement to a commercially reasonable disposition of his collateral by a secured creditor, G.S. § 25-9-501, a *guarantor* may contractually waive his right to a commercially reasonable disposi-

BORG-WARNER ACCEPTANCE CORP. v. JOHNSTON

[97 N.C. App. 575 (1990)]

tion of the debtor's collateral. In *U.S. v. H & S Realty Co.* it was held:

> Courts upholding a waiver have offered a number of rationales distinguishing guarantors from debtors. First, the purpose of guaranty agreements is to 'facilitate the issuance of loans by ensuring that the lender has a ready source from which it can collect in the event of default by the debtor. To this end, it would not be unusual for a lender to require a guarantor to waive objections to payment that otherwise might be available' . . . Second, the guarantor is thought to have a lesser interest in the collateral than does a debtor, and thus it is not unconscionable to permit waiver by a guarantor but not by a debtor . . . Third, there appears to be a feeling that guarantors are more likely than debtors to enter contracts with their eyes open, so that guarantors do not need the protection of section 9-501(3)(b)'s nonwaivability provision. . . .

*U.S. v. H & S Realty Co.*, 647 F.Supp. 1415, 1420-21 (D. Maine 1986), *affirmed*, 837 F.2d 1 (1st Cir. 1987) (citations omitted); *See also Int'l. Harvester Credit Corp. v. Bowman*, 69 N.C. App. 217, 316 S.E.2d 619, *disc. rev. denied*, 312 N.C. 493, 322 S.E.2d 556 (1984) (defendant guarantors contractually waived right to "notice of default of payment, demand and diligence, and all other notices of any kind whatsoever" upheld).

Because we have found the defendants' assignments of error to be without merit, we

Affirm.

Judges WELLS and COZORT concur.

Judge COZORT concurring.

The trial court granted partial summary judgment and left for trial the issues of (1) the fair market value of the personal property sold to P. S. Investment Company, Inc.; and (2) the amount of money damages, if any, plaintiff is entitled to recover. In *Schuch v. Hoke*, 82 N.C. App. 445, 346 S.E.2d 313 (1986), this Court held that a partial summary judgment order which establishes liability and reserves for trial the issue of damages is an interlocutory order not immediately appealable. *See also Tridyn Industries v. American Mut. Ins. Co.*, 296 N.C. 486, 251 S.E.2d 443 (1979). I

am unable to distinguish the instant case from *Schuch* and *Tridyn*, and I vote to dismiss the appeal.