14 F.3d 596
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RESOLUTION TRUST CORPORATION, as Receiver of First Federal
Savings Association of Raleigh, Plaintiff-Appellee,
v.
Joanne H. CUNNINGHAM; Mary Cooper Safrit; Robert W.
Safrit; Passmore L. Barrow, III; Cynthia G.
Barrow, Defendants-Appellants.
and
SOUTHWEST DEVELOPMENT COMPANY, a partnership; Rumpole
Corporation; Barrow-Safrit, Incorporated; W.R. Henderson &
Associates, Incorporated; Herbert I. Cunningham; Dorothy
S. Henderson; CB & S, a partnership; W.R. Henderson, a/k/a
William R. Henderson, Defendants.
 No. 93-1303.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 1, 1993.
Decided Dec. 22, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. E. Britt, District Judge.
 James Morris Kimzey, Martha K. Walston, McMillan, Kimzey & Smith, Raleigh, NC, for appellant.
 Martha LeAnn Nease, Brown & Bunch, Durham, NC, for appellee.
 E.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Five individuals, who guaranteed the debt of Southwest Development Company, a North Carolina partnership, appeal a judgment obtained against them by Resolution Trust Corporation, as successor to First Federal Savings Association of Raleigh, on the ground that the district court did not properly take into account defenses afforded to them by North Carolina statutes. The district court rejected their defenses and entered judgment against the guarantors in the amount of $5.16 million. We now affirm the district court's ruling with respect to the North Carolina statutory defenses. However, because the judgment entered against the guarantors was greater in amount than Southwest Development Company, the principal, was obliged to pay, we remand for entry of a modified judgment.
 
 
 2
 * In connection with its efforts to develop Trailwood Forest Subdivision, a residential real estate development in Raleigh, North Carolina, Southwest Development Company, a North Carolina general partnership, borrowed $7.3 million from First Federal Savings Association of Raleigh. The debt was secured by the property involved in the development and was guaranteed by the five appellants as well as other guarantors. When Southwest Development defaulted on the loan, First Federal Association of Raleigh foreclosed on the property, buying it at the foreclosure sale for $3.5 million as the highest bidder.
 
 
 3
 Thereafter, when First Federal Savings Association failed and Resolution Trust Corporation (RTC) took over as a receiver, RTC filed suit against the guarantors for a deficiency judgment representing the total debt of Southwest Development less the $3.5 million received from the foreclosure sale. The total amount claimed, including interest, was $5.16 million.* In response to the suit, the guarantors contended that under N.C. Gen.Stat. Secs. 26-7, 26-8 and 26-9, the bank, and therefore RTC as its successor, was obliged to pursue all collateral available for collection of the loan before proceeding against the guarantors. They also contended that the $3.5 million bid price was $787,825 less than the fair market value of the property sold at foreclosure and that, therefore, N.C. Gen.Stat. Sec. 45-21.36 entitled them to credit for the fair market value of the property. Shortly before trial and after discovery had been closed for the second time, during a period when the district court was considering RTC's motion for summary judgment on the statutory defenses, the guarantors raised, for the first time, a defense under N.C. Gen.Stat.Sec. 45-21.16 (imposing a requirement that guarantors be given notice of the foreclosure sale as a condition precedent to recovery from them of any deficiency). While all the guarantors did not, apparently, receive legal notice of the foreclosure sale, they did have actual notice of it.
 
 
 4
 The district court considered all the defenses, ruling that by the terms of the guaranty agreement, the guarantors waived any right to have RTC proceed first against collateral, and that the statutory defense to receive an offset against the debt in the amount of the fair market value of the property was available only to persons who had an interest in the property, and not to guarantors. On the guarantors' claim that they should be absolved from liability because of a lack of notice of the foreclosure sale, the court ruled that the defense was never pled and that at the time the guarantors sought to raise it, it was untimely. Accordingly, the court entered judgment in favor of the RTC against the guarantors in the amount of $5.16 million. Five of the guarantors have appealed.
 
 II
 
 5
 The guarantors first contend that they did not receive formal notice of the foreclosure sale as required by N.C. Gen.Stat. Sec. 45-21.16 and that therefore no deficiency may be enforced against them. That section provides that any mortgagee or trustee foreclosing on real property to collect a debt must provide a "notice of hearing" to anyone designated to receive notice in the mortgage documents, to every record owner of the real estate, and to "any person obligated to repay the indebtedness." N.C. Gen.Stat. Sec. 45-21.16(b). If a person obligated to repay the debt is not so notified, then that person "shall not be liable for any deficiency remaining after the [foreclosure] sale." N.C. Gen.Stat. Sec. 45-21.16(b)(2).
 
 
 6
 Four couples involved in the Trailwood Forest project signed as guarantors, including the Cunninghams, the Safrits, and the Barrows. Messrs. Cunningham, Safrit, and Barrow were each served notice of the foreclosure sale in their capacities as officers of closely held corporations which were general partners of Southwest Development Company. Although their wives, who are the remaining guarantors on this appeal, did not receive formal notice of the foreclosure sale, they had actual notice. Thus, even though the guarantors had actual notice of the foreclosure sale, they challenge the absence of formal notice required by N.C. Gen.Stat. Sec. 45-21.16. They do not claim any prejudice resulting from the lack of formal notice.
 
 
 7
 A defense based on N.C. Gen.Stat. Sec. 45-21.16 was never raised by the guarantors in the pleadings, and they did not seek to assert the defense until shortly before trial when the district court was considering RTC's summary judgment motion. At the time, the case had been pending over a year, discovery had been closed for a second time, and trial had been continued once. In the circumstances, the district court refused to reopen the pleadings and to consider the defense.
 
 
 8
 In concluding, as we do, that the district court did not abuse its discretion in the circumstances presented, we also note that this defense that the guarantors seek to assert is a most technical one, since all guarantors had actual notice and all had the opportunity to take any appropriate action before the foreclosure proceedings. When so technical a defense is advanced, the parties advancing the defense must also be prepared to live by the technical requirements of court rules and the court's scheduling orders.
 
 III
 
 9
 The guarantors next argue that N.C. Gen.Stat. Secs. 26-7, 26-8, and 26-9, requiring that the holder of a note, in collecting the debt, must first proceed against the maker of the note and the collateral securing the debt, was not complied with and that, therefore, they should be discharged from responsibility on the guaranty. These statutes allow a guarantor of an obligation to give written notice to the holder to pursue its recovery first by realizing the value of any collateral pledged against it. The statutes excuse the guarantor from any deficiency if the creditor fails to take such action. Rejecting this defense, the district court held that the guarantors in this case waived the defense when they agreed to the language of the guarantee agreement, which includes the following pertinent language:
 
 
 10
 The liability of the undersigned on this guaranty shall be direct and immediate and not conditional or contingent upon either pursuit of any remedies against the Borrower or any other person or foreclosure of any security interests or liens available to Lender, its successors, endorsees or assigns.... The undersigned waives any right to require that an action be brought against the Borrower or any other person or to require that resort by had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person.
 
 
 11
 We agree that under North Carolina law this language precludes the guarantors from relying upon a defense set out by N.C. Gen.Stat. Sec. 26-7. In Community Bank & Trust Co. v. Copses, 953 F.2d 133 (4th Cir.1991), we interpreted an analogous provision of a guaranty agreement to constitute a waiver of the defenses afforded by the statute. The language construed in Copses included:
 
 
 12
 I ... waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full.
 
 
 13
 Id. at 136. See also Borg-Warner Acceptance Corp. v. Johnston, 389 S.E.2d 429, 433 (1990) (written agreement by the guarantor "not to assert or take advantage of ... any defense based on lack of due diligence by Lessor in collection, protection or realization upon any collateral securing the indebtedness evidence by the Lease" held to constitute a waiver of N.C. Gen. Stat Sec. 26-7).
 
 
 14
 As in Copses, the guaranty agreement here provides unequivocally that each guarantor "waives any right ... to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of the Borrower...."
 
 
 15
 The guarantors rely upon Federal Land Bank of Columbia v. Lieben, 366 S.E.2d 592, 595 (N.C.App.1988), aff'd, 373 S.E.2d 439 (N.C.1988) (per curiam), to support their claim that the guaranty they signed did not include a waiver. In Lieben, the North Carolina appeals court held that the following language in a guaranty did not constitute a waiver by the guarantor of his rights under N.C. Gen.Stat. Sec. 26-7:
 
 
 16
 The Federal Land Bank of Columbia can require payment immediately upon the expiration of 30 days after default and shall not be required to first institute suit or exhaust its remedies against [the makers], or to first enforce its rights against any collateral which has been pledged to secure such indebtedness.
 
 
 17
 366 S.E.2d at 595. The North Carolina court determined that this language was merely descriptive, as it "only served to identify the guaranty as a guaranty of payment." 366 S.E.2d at 595-96. In contrast, as the district court properly observed, the guaranty that the guarantors signed expressly included the language of waiver.
 
 IV
 
 18
 Finally, the guarantors rely on N.C. Gen.Stat.Sec. 45-21.36 to claim a reduction in the deficiency judgment by an amount representing the difference between the fair market value of the securing property and the amount bid at the foreclosure sale. That statute provides that when an action is brought to recover a deficiency remaining after a foreclosure sale, the mortgagor may assert, as a "defense or offset" to the deficiency, the claim that the property was purchased at the sale for an amount substantially less than its true market value. The guarantors contend that the $3.5 million bid price in this case was $787,825 less than the fair market value of the Trailwood Forest property. Accordingly, they seek to have the deficiency judgment reduced by that amount, together with the interest applicable to it. The district court rejected the claim, holding that the statute may be invoked only by a person who has an actual property interest in the mortgage property, and not by a guarantor.
 
 
 19
 We agree with the district court's conclusion. The statute provides that the difference between the amount bid at a foreclosure sale and the fair market value may be asserted as a matter of defense and offset in a deficiency judgment proceeding against "the mortgagor, the trustor, or other maker of any such obligation whose property has been so purchased [at the foreclosure sale]." N.C. Gen.Stat. Sec. 45-21.36. Not only does the statute thus limit the class of persons entitled to assert the defense, the North Carolina courts have uniformly construed the statute to afford the defense only to persons holding an interest in the property. See Raleigh Federal Savings Bank v.Godwin, 394 S.E.2d 294, 296 (N.C.App.1990) (holding that only "persons who hold a property interest in the mortgage property" may invoke N.C. Gen.Stat. Sec. 45-21.36); Borg-Warner Acceptance Corp., 389 S.E.2d at 432 (holding that defense under N.C. Gen.Stat. 45-21.36 is available only to a party who holds a property interest in the mortgaged property and not to a guarantor). Accordingly, we conclude that the guarantors here may not, by virtue of Sec. 45-21.36, compel a reduction in the deficiency judgment. That does not end the matter, however.
 
 
 20
 By stipulation the mortgagor in this case has on its own behalf obtained the benefit of Sec. 45-21.36, and the mortgagor is among the class of persons entitled to the benefit of the statute. The stipulation obtained by the mortgagor in this case provides:
 
 
 21
 The parties consent and stipulate that pursuant to N. C. Gen. Stat. Sec. 45-21.36 an offset of $787,825 is proper, which off-set reduces the December 14, 1992 deficiency judgment to $4,129,919.81 ($3,141,539.67 representing principal and $988,380.14 representing the interest through December 14, 1992) with per diem interest accruing at a rate of $l,047.18.
 
 
 22
 Since the guarantors in this case are obliged to pay only that which the principal has not paid, as a matter of guarantee law the guarantors are entitled to the benefit of any payment made or credit obtained by the principal in satisfaction of the note. The guaranty agreement in this case specifically so provides:
 
 
 23
 If the debts of the Borrower are partially paid through the election of Lender, its successors, endorsees, or assigns, to pursue any of the remedies mentioned in this paragraph or if such debts are otherwise partially paid, the undersigned shall remain liable for any balance of such debts not exceeding the total liabilities of the undersigned.
 
 
 24
 (Emphasis added).
 
 
 25
 Accordingly, we hold that the guarantors are obliged to pay only that portion of the debt which has remained unsatisfied by the principal. Because the stipulation credits the principal with an additional $787,825 plus interest, the debt has been reduced by that amount and accordingly, the guarantors' obligation should be reduced by the same amount. We remand this case for modification of the judgment to reflect this credit.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR ENTRY OF A JUDGMENT IN ACCORDANCE WITH THIS OPINION.
 
 
 
 *
 The parties have stipulated that the principal and interest due and owing on the note as of December 14, 1992, less the foreclosure credit and other payments and proceeds received, equals $5,159,869.93. This represents $3,929,364.67 in principal and $1,230,505.26 in interest through December 14, 1992